The next case on our call this morning is agenda number 12, case number 107317, Mark Turner v. Memorial Medical Center. We'll wait until everybody gets settled. It's okay. You may proceed, counsel. Good morning. May it please the Court, my name is John Baker, and I represent the plaintiff appellant in this matter, Mark Turner. Mr. Karoff, good morning. We are here today to ask this Court simply to do one thing, and that is to declare that in Illinois, it is the public policy of our state to protect the safety rights of medical patients, and to ask this Court to protect individuals who work in the healthcare fields from retaliation or termination when they speak out against problems in the healthcare facilities. Now, we are here today on a fairly limited record. This case was dismissed by the district court, and no discovery was undertaken. We are here today simply based off of the amended complaint that was filed. Now, I would like to just outline a little bit of the factual background because I do think it is somewhat important. Mr. Turner was a 23-year employee of Memorial Medical Center, a hospital, a large hospital, located in Springfield. In 2006, the fall of 2006, Memorial was undergoing an accreditation review by the Joint Commission on Accreditation of Healthcare Organizations, or JACO. At that time, Mr. Turner met with the surveyor, and what Mr. Turner told them was that Memorial's policies did not comply with JACO standards, specifically what he told them related to electronic charting of medical records. And the complaint alleges that JACO requires that electronic records be kept of patient treatment and that they be kept immediately. What Mr. Turner told them... Can you cite to us the specific commission standard that requires that? No, I can't, Justice Garmon, and I can't do that for a good reason, and that is because I don't have access to those policies. Those policies, some of them, a minor portion of them, have been attached to this for the first time here before the Supreme Court. That's private information that we do not have access to. But what we are alleging is that whether JACO requires that is essentially a question of fact that we need the discovery to establish. We need to sit down with JACO. We need to read all of their policies, have access to all of their policies in total. We need to speak to the surveyor to find out exactly what was said and whether it did violate patient standards. And I think for the purposes of why we're here and where we are procedurally in the case, this is important, and possibly that could turn out to be the case. I don't believe that it will. The Illinois law and administrative regulations are available to you. Are there any that you can cite that requires immediate charting of patient care? Justice Freeman, there are not. I mean, the Illinois law on immediate charting of care, there is nothing there. You rely on JACO? Well, we rely on the JACO standards to say that patient safety was jeopardized by not charting immediately. Their website seems to indicate its views is equivalent to accreditation as an equivalent of good housekeeping seal of approval for hospitals. Is it your position that this would override the hospital licensing act in Illinois? Well, Justice Freeman, I don't know that it would override. And no, I guess it is not my position that it would override. Is it equivalent? Well, it's different. It's important because it is an accreditation body. And if a hospital does not have the accreditation of JACO, and up until recently I believe it was only JACO or one of its counterparts, it can't receive federal funding for Medicare and Medicaid. So the JACO accreditation process is very, very, very important to a hospital that elects to go through the JACO process. After you have gone through all of the standards of JACO and that expressed public policy, would it be right or improper for this court to go into the legislator's turf in determining what public policy should be, that JACO standards or the Illinois statute? Justice Freeman, I think what we are doing is we are asking something a little bit different. Okay? The question here is, is patient safety a matter of public policy? All right? And I think that it was summarized nicely by Justice Appleton in the appellate court. And what he said is to rephrase the issue, is it the public policy of the state of Illinois for professional healthcare providers to speak truthfully to state regulatory agencies concerning hospital practices involving even tangentially patient safety? But in saying that, he has really equated JACO to a state regulatory agency, and it is not. Well, the question is, what is the public policy of the state of Illinois? Patient safety is the public policy of the state of Illinois. Under Memorial's argument, in order for this sort of claim to proceed, there has got to be some specific detailed rule in Illinois law that says whatever is being alleged is a violation. And I don't think that the administrative rules are that detailed. And I think that really what you are asking about is a question of fact. And I believe that the appropriate question of law is, as a general matter, if an employee complains about something that affects patient safety, is that employee protected from retaliation under the common law retaliatory discharge tort in this state? This is going to be much more difficult to apply, isn't it, Mr. Baker? Because it would seem under your analysis the issue will be on a case-by-case basis, right? Yes, it will. Under my analysis, it becomes factually intensive. It becomes a question of fact as to whether patient safety was potentially jeopardized. So the courts are going to continually balance with public policy and what the limits of the tort are, rather than, as I believe we are going to hear from opposing counsel, kind of a pretty easy way to address retaliatory discharge in this state. Well, if the easy way to address retaliatory discharge is to say, you've got to cite to a specific rule in Illinois law that says that this is a violation, yes, that is likely to weed out a lot of claims. But if the real question is, what are the interests of the patients in the state of Illinois? And I believe that that is what the interest is. What are the interests of the patients? It is in the interest of the patients of the state of Illinois that if there are problems that compromise patient safety, that those should come forward. And I believe that the rights of the patients are paramount in this particular situation. The rules developed by the Department of Health to implement, I think, the statutory directive requires that the medical records be accurate, timely, and complete. As to when the medical records should be made, the Department of Health requires only that  the medical records be complete. Isn't that sufficient to establish the interests of patients? No, it's not. And the question of what is timely is important. Timely might be 20 minutes or 15 minutes. But in this case, we have a situation where people are waiting 10 hours to chart something. And it doesn't take a leap of imagination to understand the importance of immediately charting patient care, particularly when someone is there on an emergency basis. What medicine has been provided to them? What treatments have they been given? What are their vital signs? If we are waiting for a period of six, seven, eight hours, by the time that information is needed right away, that information is needed later. And my opinion on that, Justice Freeman, is that these are questions of fact. And what Memorial is essentially suggesting to this court is that the minutia of these particular facts need to be involved in all of these cases. We are saying that it's something different. The public policy of this state is patient safety. That is very clear. Now, if Mr. Turner spoke out on an issue of patient safety, that is a question of fact. In our complaint, we say that Memorial itself acknowledges that that is an issue. Immediate charting is an issue of patient safety. And it's not on the record, but they do say that. They do say that. Can you explain that to me? It's not a record, but they do say that? Well, we're here on the motion to dismiss. And so really what's in front of the court is the complaint. And in the complaint, we allege that Memorial makes the statement that immediate charting is a matter of patient safety. In the document that was used to terminate Mr. Turner, which is not a record before this court because it was not, they specifically state that immediate charting is a matter of patient safety. So what I'm saying is that's what our complaint alleges. And there's evidence to support it. The evidence just is not in the record because of where we happen to be procedurally. All right. Thank you, Mr. Chief Justice. The case that is before this court today is actually very, very simple. And it really boils down to how broad you define the issue. We ask this court to define the issue broadly in the sense that it is a matter of patient safety. It is the public policy of the state of Illinois that patient safety be protected. The Memorial asks you to make it very narrow. And we believe that that does not promote patient safety in the state of Illinois. Didn't the appellate court here do really what you're asking us to do? And I know you're asking for an expansion, but they looked at it as a, I mean, your client was an at-will employee, right? Yes, he was. So Palmatier came into play, and didn't they basically say that plaintiffs simply told JCAHO that Memorial Hospital's charting practices were different than the acronym standards? And that such action falls short of the Supreme Court's public policy threshold articulated in Palmatier? So I know you're saying that's a narrow interpretation, but even with your argument that when we look at patient safety, didn't this appellate court look at the specific facts of this case and say that public policy doesn't warrant a different result in this particular case as it surrounds your client's at-will employment? Well, as far as facts, the only facts that are there are what is contained in the complaint. Now, what is contained in the complaint I don't believe corresponds with what the appellate court stated. And, you know, we state in our complaint at paragraph 18, MMC has recognized that immediate EMR charting is an issue of patient safety. Then at paragraph 20, we state, Turner advised JCAHO surveyor that MMC was jeopardizing the safety of its patients. These are the facts that are alleged. And so simply saying, well, it's a little bit different. Turner went further than that and stated this is jeopardizing patient safety. And that is what is alleged in the complaint. And those are the facts that are here. You said you agree with Justice Appleton, which I think talked about expanding as you have, but it also was a special concurrence, right? And he said that he had to agree under current Supreme Court authority. So do we have to reverse some cases to get to the position you're at? No. I don't believe that there is any Supreme Court decision on point with this particular decision or with this particular set of issues. So, no, I don't necessarily agree that it has to be, that the law of retaliatory discharge has to be expanded. I think that it becomes important in how we define the question that is being asked. And what we are saying is that the most, arguably the most fundamental policy of this State has to be to engage and ensure patient safety. That's what we are saying. And when an employee speaks out, particularly to someone with power, like the JCOA accreditors, speaks out and says, we are memorials jeopardizing patient safety, and is fired as a result of that, that offends the public policy of the State of Illinois. Are you really asking us to do something more? Are you asking us to determine that it is the public policy of the State to require immediate charting, and because your client was fired, that that damages that public policy? Justice Carminer, no. I am not asking the Court to do that. I believe that whether EMAR, immediate EMAR charting, jeopardizes patient safety, I don't believe so. Patient safety is a question of fact that will be properly resolved at the trial court level by, if not the JCOA surveyors themselves, then by expert witnesses. But when an employee speaks out, what I am saying, when an employee speaks out alleging that this jeopardizes patient safety, that this is putting our patients at risk, this Court, our State, needs to protect those statements. And we would not have to overrule any Illinois cases. What about Cates v. Cates, Kelsey, and Kelsey v. Motorola Incorporated? Those cases would not have to be overruled? Well, I don't know... I don't know that the cases themselves specifically have to be overruled. You know, I think that this Court has been fairly consistent in its opinions in stating that the tort of retaliatory discharge is a fairly narrow tort and is aimed solely at protecting the public interest. The public policy of the State of Illinois. And it seems to me that a fair reading of all of the decisions of this Court is that what the retaliatory discharge is designed to do is to protect the citizens of the State of Illinois and to encourage people to do things that protect the citizenry without fear of being terminated. Your response to Justice Carmer's question raises a question in my mind. So the tort of retaliatory discharge in this case would apply to an employee who believes, not knows, you said that in response to his question whether or not immediate charting really affects patient safety is a question of fact that may have to be developed by experts, doctors and others I would assume. So the retaliatory discharge in this case would apply to an employee who believes that this affects patient safety. Well, when you're talking about the purposes of surviving a motion to dismiss, I think that that is probably correct. If you are talking about actually being successful once an evidentiary record has been established, I don't believe that that's necessarily the case. But I would also refer to the fact that it's a close call whether or not it affects patient safety or not. But what we do here affects a lot of other cases. So to survive any type of dispositive motion then, all it has to do would be a close call. So a particular employee would have to assert that something was against patient safety. Whether or not it's the most bizarre example in the world that we can think of or not, the response would seem to be the same. Well, it's the pleading stage, Judge. We should have a chance to bring in an expert to say it really does affect patient safety. So all we're left with now is an employee with a belief. You're throwing out the baby with the bathwater. You're assuming that then people who come forward with good, solid claims are going to be thrown out because we have a problem in deciding whether, well, at the pleading stage, is this really something that compromises patient safety? And, you know, at the pleading stage, we give the benefit to the plaintiff. And, you know, from a practical perspective, attorneys are not going to pursue claims that have little to no merit as to whether someone is complaining about something that compromises patient safety. Thank you, Mr. Fisher. Thank you all very much. May it please the Court. Counsel. My name is John Karoff. I represent the defendant at the Lee Memorial Medical Center in this cause of action. The total retaliatory discharge in this state exists to protect public policy, or as this Court has said in the past, to ensure the public policy. So how do you find public policy? It's our position, the Respondent's position here, that the public policy, the speaker of the public policy is our General Assembly. And our General Assembly, it's their task, their charge to define what public policy is, put that forth into laws, and then have the state laws and regulations speak to what the public policy is. So when a court is presented with a whistleblower type of cause of action or retaliatory discharge, it's the court's job to boil down that complaint to its nub and find out where is the public policy that is not being carried out by something that is said in the complaint. And I submit that is exactly what the appellate court and the circuit court has done in this case. They've looked at what is said, they've not found that to be a statement of public policy in the state of Illinois, and therefore the complainant in this case, Mr. Turner, is not a whistleblower. This is a whistleblower cause of action, he's blown no whistle. So what did Mr. Turner really say? I think if you look at his complaint on page four of his complaint, which is appendix page 13, you'll see exactly what he said. Turner, quote, explained that respiratory therapy section only requires therapists to chart at some point in time before their shift concluded, close quote. Everything else in the complaint around that is all I would characterize as spin, as context verbiage, but what he really said is the respiratory therapy section must chart at some point in time before their shift concluded. Not after their shift concluded. I think one of Mr. Baker's comments was some of these chartings would come 10, 12 hours after the fact. They're not saying that in the complaint that they are told to wait until your shift is over and then chart. They're saying chart sometime before the end of the shift. So this then poses a question. Does this language raise a question? Does it show any, is there any law, regulation, standard, anything which says that it's the policy of this state that respiratory therapists must chart more promptly than that? And I submit to your honors that there is not. The complainant cites the Medical Patients' Right Act in their complaint as where you might find this public policy. That complaint deals with a variety of issues. Talks about confidentiality, talks about insurance issues, billing issues. Seemingly it's an open forum for the General Assembly to put in anything they want to say that this is our public policy. But they did not say anything in that act about the timeliness of medical record preparation. Question about, you know, what is timely? How is a court to define that if the General Assembly has not spoken to it? You can easily imagine a situation where a therapist is seeing one patient. Maybe he's called down the hall to consult on another procedure. Is it not timely because the therapist chose to honor a request of a colleague and moved down the hall? Do they have to stop right there and make that charting part of the record? It's difficult to even define what is timely. And so the General Assembly has chosen not to, and I think properly so. In the Hospital Report Card Act, not cited in the complaint but in the brief, again another General Assembly opportunity to speak to this issue. And again, they go through various consumer rights involved in finding out what's going on in a hospital, what information a hospital has to compile and make available to the public, cited various other things, but did not get to timeliness of medical record preparation. So there's two opportunities the General Assembly had to speak to this issue, and neither one did they choose to do so. Why not? Well, because the Hospital Licensing Act, as Justice Freeman was asking about earlier, I think has already done it. They have given us language. It says that records must be prepared and the hospital must have a policy on that preparation. That is the public policy of the State of Illinois, that you must prepare these records. And a hospital must actually have a method by which they are prepared. To accept the plaintiff's position, would we have to overrule Palmatier? I believe so, Your Honor. Now, there is language in Palmatier which says that if you first look to the Constitution and the statutes of the State of Illinois, but when they are silent, there is some room that this Court has said for the Court to intervene. My argument, though, is that in this case, there is not the silence in the sense because the General Assembly has spoken to records preparation. They say it must be done and it must be a policy stated, but it's not something that the General Assembly has not ever touched upon, something that has emerged that the General Assembly has not had a chance to speak to, which would require maybe the Court to backfill and find there to be some public policy that the General Assembly just hasn't had a chance to speak to yet or has not. In this case, the General Assembly has spoken. They have established the Hospital Licensing Act. They've addressed the issue of medical record preparation, and they have found that there is no reason to make it more than simply prepare them and have a policy to do so. This Court has said previously in the Barr case that it's not enough simply to cite a statute. You must demonstrate the policy at issue in that statute is being violated, and by citing the Medical Patients' Rights Act, they've not hit the right statute that would do anything to help their cause of action. Mr. Baker mentioned, and I agree, that this Court has previously said the retaliatory discharge cause of action is a very limited tort of narrow application. That's been the history of this Court in defining this tort all through its case history. As I heard the argument this morning and as I've read in his brief, that would be a very, what the plaintiff in this case would like to be a very different way of going about the business. It really does come down to he believes it's a public policy violation, so therefore it passes the first test. And that to me is making self, the public policy basically self-defining on behalf of any plaintiff, which to me leaves the courts with very ineffective guidance as to how to determine and keep within this Court's precedent which saying retaliatory discharge is limited and narrow in scope. If it's anything like what the plaintiff is arguing in this case, it's no longer limited and narrow. It's whatever the plaintiff thinks it is. Just because it happens to be in a health care environment or there is a patient involved, should not be carte blanche for plaintiffs to self-define a tort which is, this Court has always said, is very limited and narrow in application. The General Assembly has provided through the Whistleblower Act and the Hospital Report Card Act, methods for which a statutory cause of action could be brought in this case. Again, there are alternatives for plaintiffs who feel they have a grievance in a health care environment. That's not what they've chosen to pursue here. They've chosen the common law approach. My point to the Court here is that there's no reason to try to broaden common law to encompass this particular claim when there are alternatives for a plaintiff to pursue in this particular area. Counsel, do the pleadings indicate that your hospital's policy is that the charting, you've alluded to this, but I want to make sure it's clear. The pleadings indicate that it just has to be done before the end of the shift. That is what he says, yes. So that's in the pleadings. Therapists may work 10-hour shifts. You alluded to 10 hours. That's what the plaintiff alluded to, but I think that's probably a fair presumption that some medical professionals work long hours. At least, as it could work out, whether it's 10 minutes or 5 hours, it could be 10 hours, correct? Conceivably, it could be. In your brief on page 12, you do refer to the Illinois Administrative Code regulations that require records, as you said, quote, accurate, timely, and complete. How would a record be accurate or timely or complete if the information on the respiratory therapist's charting is not done for an entire period of 10 hours? Does that not reasonably impact public or public patient safety? I don't know that I would. One could certainly envision a circumstance where a record, if not prepared until 10 hours later, and a patient would have a different set of circumstances emerge two hours after the treatment, yes, there would be a reason why one would wish to have that more timely prepared. But I think you can spin very many circumstances on that. What is timely? Is it 5 hours? Is it 2 hours? Is it 10 minutes? Is it 5 minutes? Think of all the different situations that could occur in a health care environment where emergent situations happen. It's difficult to try to define it, I guess, is my concern. And to say that to go to a place where the General Assembly has chosen not to go, when the General Assembly has used the word timely, it would seem very easy for the General Assembly, if they are speaking to the public policy, that they could say, and we define timely is or should be within X number of minutes or hours. But I think it's just a very difficult standard to get your hands around to set forth in that particular way because of all the different situations that can occur in a health care environment. So can you envision a scenario where a more prompt record might have been beneficial to the patient? Surely you can. I can't argue against that. But what I am saying is the public policy, what the state has determined through the General Assembly, has not gone that far, and there's not a need for the courts, I believe, to go into that area. Turner concludes that... Just one question. Does the JCO's guidelines or regulation affect the licensing of the hospital in any way? JCO's guidelines, not the licensing, Your Honor. Certain ability to receive federal governmental payments can cause a hospital to rely on JCO. It's not an exclusive way. If a hospital chooses not to undergo a joint commission review, the state of Illinois Department of Public Health can backfill and do that same type of review. But because of the joint commission accreditation, there are certain Medicare approvals that the federal government will presume are in place, and the hospital has that stamp of approval. Are there any federal regulations or any other regulations that would affect licensing that defines timing? No, Your Honor. And if the court looked at the appendix of my brief and looked into the joint commission, even joint commission itself doesn't define timely, because they recognize how can you say in each and every situation what's timely and what's not. So the basis of the complaint, and the reason is that the joint commission would say this about timeliness, and it really doesn't. I cite the joint commission regulations in my brief because the counsel in this case says they are equivalent to regulations. And so I thought if they are equivalent to regulations, then they are fair game for citation to the court, even though counsel is not in their brief cited to specific sections in his complaint. Counsel, before you leave that point, Mr. Baker indicated during his argument that those are just excerpts. We don't have the entire set of guidelines or whatever they're called. But more importantly, that they were not in the record in the trial court. Are those documents attached to the brief properly in the record before us? Well, and I struggle with that question, Your Honor, because they are certainly not attached to the complaint. The reason I put them in is to respond to the amicus argument that the joint commission has regulatory stature, if you will. It is akin to a regulation. And my thought is if it is akin to a regulation, certainly I can cite to the court the Department of Public Health regulations and the statutes of the state. I don't know if they can have their cake and eat it too, so to speak. If it's a regulation, it ought to have regulatory status. If it's not a regulation, then it doesn't speak to public policy. And so for that reason, I weighed it and cited it. I would go ahead and include it for the court's review to determine what they would do. Public policy, as stated in Palantir, strikes at the heart of a citizen's duties and responsibilities. The court only fills in where the constitution and statutes are silent. Here, as I've said a few times now, the only law and regulation are not silent. There's not a need for the court to intervene. Nobody mandates immediate charting of patient care. There's no need to go beyond statute. The retaliatory discharge tort is well-defined in the state, and without a change in the direction that the plaintiff would want here would take it in an entirely new direction, which would be contrary to a number of years of Supreme Court history. So if there are no further questions, I would ask the court affirm the appellate court decision. Thank you, Your Honor. Thank you, and I will be brief. There's a question as to what in the regulations timely means. And I think that has to be flushed out by experts. Because in the medical field, five minutes might be considered timely, 15 minutes might be considered on the edge, and 30 minutes would be considered untimely, let alone what 10 hours would be. Wouldn't it also have to be flushed out on a case-by-case basis? If there were several emergencies that come up, and they've given care to one patient, the other patient's been taken care of, the other patient's in jeopardy, doesn't that impact what's timely? It's one thing if you go take a coffee break, but it's another thing if you're taking care of patients that need immediate care. Well, there's a question as to what constitutes sound medical practices. And that is a question that I think an expert has to answer, and what timely means in this particular context. I mean, they are suggesting that Illinois law says all you have to do is set up a policy of charting, and that's essentially it. And you can chart whenever you want, and that wouldn't be a violation. But let's turn things around a little bit. If a medical malpractice claim is brought because an error is made when someone doesn't chart, timely, you know, because someone didn't chart, there was no knowledge that a certain medication had already been administered. So then we go ahead two hours later, because it's not charted timely, we go ahead and we give that medication again, because we don't know that that medication was already given. And that patient is injured or dies. But in that instance, you have a specific factual circumstance to address. And here you're talking about setting policy across the board for a hospital, and to direct their employees how to administer that policy. No, no, Justice Grumman, with all due respect, that's not what we are asking. What we are saying is the public policy is patient safety. That's the public policy here, that the state of Illinois wants to protect patient safety. So if an employee says, I don't think the hospital is protecting patient safety, and then they get fired, and they're an at-will employee, that would be enough to satisfy a retaliatory discharge complaint? Well, I think that there's got to be some more context to that. I mean, I think just a broad statement, we're jeopardizing patient safety, isn't really saying anything at all. I mean, if there are specifics there, if they say, look, I believe that because we are reusing needles, let's say, we are jeopardizing patient safety, then yeah, that becomes an issue. But wouldn't that be a specific part of standards that are established either under the Licensing Act or given regulations? Well, not everything that implicates patient safety is laid out in one of the Illinois regulations. I mean, in a medical malpractice case, you don't have to say, well, this action violated a specific Illinois regulation. You have to say that this action was inconsistent with sound medical policy, and then it becomes a matter of debate amongst expert witnesses as to whether it did violate the standard of care. It just seems to me that you're asking us to expand retaliatory discharge in the healthcare field very broadly. Well, I disagree. I think that we are asking this court to, you know, as far as expanding it, I don't really believe that it's an expansion. Is there any case that's close to this? From this court? Yes. No, but I don't know that this specific issue has been before this court before. I mean, when the framework is we are talking about an issue of patient safety. That's the question. I am talking about patient safety. And this court protects the rights of the citizenry. That's what we are essentially asking this court to do. Well, that's true. But this court has balanced the extraordinary remedy of retaliatory discharge as it applies to an at-will employee. And that's why my first question to you, probably a half hour ago at this point, was the clear standard that is set and what you're asking us to do with the clear standard. And speaking of clear standard, the whole clear mandate that we've looked at, improper conduct known as a clear mandate where the alleged conduct contravenes a clear mandate of public policy, but it's not necessarily a law. So when we're looking in the context of this case, you know, Justice Freeman brings up the Hospital Act, which opposing counsel did too, which indicates you have to make a record. You're saying that this clear mandate are these JC on and on provisions that establish that those records have to be made at a certain time. No, that's not what I'm saying. What I'm saying, the clear mandate of public policy is to protect patient safety. That's what I am saying. When an employee goes forward. And what was the violation of patient safety in the context of your case? Not the Hospital Act. Your clear mandate comes out of these provisions that weren't being complied with and the indication that they weren't being complied with. That's what I'm saying. You have to admit, though, at least it would be, if not overruling Palmatier, it would certainly be a pretty robust extension of our case law in this area, wouldn't you? No, I don't. I would not admit to that. I think that Justice Appleton has it correct, and I don't think it overrules Palmatier. Palmatier, I believe, expanded the tort in the first place. It recognized the whistleblower action. And essentially, if someone blows the whistle on policies that are impacting the public at large, it is protected. That's what I look at Palmatier. And I certainly understand why you're focusing on the importance of the whole public policy of the State of Illinois as it applies to health care, but your example with Justice Garment of a medical malpractice case, I mean, aren't we dealing with apples and oranges there? In a medical malpractice case, you have a patient being harmed and the ability to prove that that deviation from the standard of care caused the damages in a particular case. Here we are balancing an extraordinary remedy for at-will employees that could be fired for this, let alone anything else. And within the context of that at-will employee, when are we going to extend it and recognize retaliatory discharge? And we've outlined some of them, like you said, a worker's comp claim and on and on. But aren't we dealing a little bit with apples and oranges when you bring up medical malpractice? No, Justice Thomas. In fact, we're doing something more important. We are setting out an example to protect those people so those things don't happen to them in the first place. We are saying to an employee, if you see a problem, if you see something that could potentially jeopardize patient safety down the road, you can report it without fear of retaliation. That's what we are saying. We are trying to protect those people from being in a situation where there is medical malpractice in the first place. That's what we are attempting to do. And can it be based solely on the perception of that particular at-will employee? What does it have to be based on? Well, let me just, to answer that question, because I think you asked me that question last time. And when I was sitting there, I read through the Hospital Report Card Act, and what it says is you can't punish an employee who discloses to the nursing staff supervisor or manager, a private accreditation organization, the nurse's collective bargaining agent, or a regulatory agency any activity, policy, or practice of a hospital that violates this act or any other law or rule that the, quote, employee reasonably believes poses a risk to the health, safety, or welfare of a patient or to the public. And does the JCAHO regulation raise to the law or rule standard? Well, I believe whether it is a regulation, I do believe that it is a rule. Now, I mean, this doesn't say that it has to be a rule of the state of Illinois. This is an accreditation body that has a very significant role to play in the delivery of health care services in this country. We are not talking about going out and speaking to somebody who is irrelevant. JCAHO is highly relevant. So I know that my time has expired. I certainly appreciate the Court's patience, and I ask the Court to reverse the decisions of both the district and circuit courts. Thank you very much.